J-S44040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM JACKSON | : | |
| | : | |
| Appellant | : | No. 2466 EDA 2022 |

Appeal from the PCRA Order Entered September 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000312-2011

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:               **FILED SEPTEMBER 16, 2025**

Appellant, William Jackson, appeals from the September 7, 2022 order

dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA),

42 Pa.C.S.A. §§ 9541-46.  We affirm.

This Court previously summarized the relevant facts and procedural

history of this case as follows.

> On March 29, 2007, at approximately 3:30 [a.m.], Vera Spruill
> (Victim) heard [a] commotion outside of her home [along]
> Wyalusing Avenue in the City and County of Philadelphia[,
> Pennsylvania].  Victim, who was in her bedroom with her infant
> child[,] went downstairs and opened her front door to see the
> cause of the commotion.  [Appellant], Johnny Sow[b]ell[,] and
> a third man forced themselves through Victim's front door and
> into her home and threw her to the floor; only Appellant and
> the third male brandished firearms.  All three males searched
> Victim yelling, "Where the f*ck is the money!?"  When Victim
> responded that she had no money, all three males began to
> ransack the home. They asked who else was in the home and

_____

[*] Retired Senior Judge assigned to the Superior Court.

Victim responded, "Just me and the baby."  The third male yelled to Appellant, "We takin['] all this sh*t . . .  take [Victim] to the basement!"

Appellant threw Victim down the basement steps.  As Victim was rising to her feet, Appellant forced her back down on her knees.  He held the gun to Victim's head and forced her to perform oral sex on him.  After a few moments, the other males yelled to Appellant to come back upstairs, and all three exited the house.

Victim ran upstairs to her child and called [the] police, who arrived a short time later.  Victim went with police to the district station to file a report.

The record further reflects that Appellant, his co-defendant Johnny Sow[b]ell, and the unidentified man stole many items from Victim's house including a laptop computer and computer bag.  However, it was not until three years later that police discovered Victim's property in Johnny Sow[b]ell's residence during an unrelated investigation.  Inside Victim's computer bag was a repair ticket bearing Victim's boyfriend's name and handwriting, and a photograph. Appellant was one of the men in the photograph.  Victim was called and later identified the computer bag and other items as property that was stolen in 2007.  When the police showed Victim the photograph that was found inside the computer bag, she identified one of the men as Appellant, and she stated that Appellant was the one who forced her to perform oral sex at gunpoint.  Victim also identified Appellant from a separate photo array.

On July 23, 2012, a jury found Appellant guilty of robbery, rape, conspiracy, and possessing an instrument of crime.  On January 18, 2013, the trial court sentenced Appellant to an aggregate term of [15] to [30] years' imprisonment.  He timely filed a post-sentence motion, which was denied by operation of law on May 29, 2013.  Appellant then timely filed a notice of appeal. This Court affirmed his judgments of sentence on July 15, 2014, and our Supreme Court denied allowance of appeal on December 26, 2014.  ***Commonwealth v. Jackson***, 105 A.3d 791 (Pa. Super. 2014) (table), *allocatur denied*, 105 A.3d 735 (Pa. 2014) (table).

Appellant filed a *pro se* PCRA petition on December 2, 2015. Counsel was appointed and, on July 31, 2017, filed an amended PCRA petition.  In the amended petition, Appellant asserted that

his prior counsel was ineffective for not preserving a challenge to the weight of the evidence and that he learned that a man named Marquis Johnson had supposedly committed the crime with [Mr.] Sowbell and that [Appellant] had been mistakenly identified for Johnson. After the Commonwealth filed a motion to dismiss the petition, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. Appellant did not respond and, on June 4, 2018, the PCRA court dismissed the petition.

After a timely appeal followed, new counsel was appointed after initial PCRA counsel passed away while the appeal was pending. On March 16, 2021, this Court affirmed in part, and vacated in part. **Commonwealth v. Jackson**, [2021 WL 982759] (Pa. Super. 2021)[.] As to our disposition, we held that the lower court improperly dismissed the petition as untimely filed. [**Id.** at *6]. We remanded for an evidentiary hearing on the after-discovered evidence claim at which time the lower court would assess the credibility of testimony from co-defendant Sowbell. **Id**[.] As for the ineffectiveness claim, we determined that because a weight-of-the-evidence claim lacked merit, Appellant could not prevail on a claim that prior counsel should have properly preserved such a claim. **Id.** at *9. We also denied a legality of sentence claim as meritless and found that Appellant waived a claim for entitlement to a remand because the PCRA court failed to rule on a motion for the appointment of an investigator. **Id.** at *10. As to the ruling on the claim concerning the motion for an appointed investigator, we noted that the claim was rejected without prejudice to Appellant's ability to seek a ruling on that motion upon remand. **Id.**

The PCRA court granted Appellant's subsequent requests for funds for a private investigator. On May 26 and June 30, 2022, the court presided over a bifurcated hearing in which the court heard testimony from [] Sowbell, Appellant's aunt (Tabitha Jackson), Victim, and Appellant. The PCRA court summarized the testimony from the hearing as follows:

> [Appellant] first called Mr. Johnny Sow[b]ell, [Appellant]'s [c]o-[d]efendant, to the stand. Mr. Sow[b]ell came to know [Appellant] because [Appellant] is a friend of his brother, James King. Moreover, Mr. Sow[b]ell asserted that he became acquainted with [Victim] because he regularly sold narcotics from [Victim]'s house. On the date of the

incident, Mr. Sow[b]ell was allegedly there prior to the robbery because he was selling narcotics out of [Victim]'s residence.

Mr. Sow[b]ell alleged that the robbery was staged by [Victim]. Mr. Sow[b]ell recounts that two men came into [Victim]'s home and, while inside of her home, she and the two men got into an argument. [Victim] then gave the persons who robbed her the items that were taken from her premises and started knocking items everywhere "ransacking" her own property. Though the persons who robbed [Victim] took her items, Mr. Sow[b]ell asserts that none of his items were taken. In contrast, when [the] Commonwealth inquired why [Victim]'s reported stolen items were found in Mr. Sow[b]ell's home, he insisted that he purchased the items found in exchange for drugs for [Victim].

Mr. Sow[b]ell alleges that while the two men were in the property, he was sitting at the table and was able to see their faces. After [Victim] allegedly "ransacked" her own home, the two men left, and Mr. Sow[b]ell was instructed by [Victim] to stay at the property. However, Mr. Sow[b]ell left [Victim]'s home but stood outside of the residence when the police arrived. Mr. Sow[b]ell stressed that he was not involved with the robbery that took place at [Victim]'s residence nor was [Appellant.] Mr. Sow[b]ell alleges that the true perpetrators of the robbery are Marquis Johnson and a man named "Dank," who are both allegedly deceased. [Following up upon Mr. Sowbell's testimony at Appellant's PCRA hearing, the PCRA court asked why Mr. Sowbell told] his attorney about the alleged conspiracy and whether he filed a PCRA, which Mr. Sow[b]ell answered in the affirmative. Additionally, throughout the evidentiary hearing, [d]efense counsel [] mention[ed] that Mr. Sow[b]ell had a right against self-incrimination, so he did not have to testify at trial. However, Mr. Sow[b]ell stated the reason he did not testify was because he was told by his lawyer that it would not look good because of his criminal background; however, it was Mr. Sow[b]ell's decision not to testify.

Mr. Sow[b]ell stressed that even if he was not subpoenaed by [d]efense [c]ounsel to appear at the evidentiary hearing, he would have found a way to come to [c]ourt to tell the truth since he was at the residence during the incident. Mr. Sow[b]ell maintains that he relayed that information to [Appellant] prior to the conclusion of trial while they both were in the "tank" together.

After the [PCRA c]ourt heard from Mr. Sow[b]ell, [Appellant] testified and maintained that he never sold drugs with Mr. Sow[b]ell and did not know Mr. Sow[b]ell at the time of the incident. Tabitha Jackson, [Appellant]'s aunt who lives on Wyalusing Avenue, Philadelphia, [Pennsylvania], testified that after [Appellant] was released from incarceration in March 2007, he lived with friends in South [Philadelphia], and then moved [in] with her sometime in April 2007. However, [Appellant] maintained that he lived with his grandparents after he was released, moved in a house with friends in South Philadelphia, and then moved in with his aunt during the end of June or the beginning of July in 2007. [Appellant] explained that he had to move from the residence in South Philadelphia because the landlord was tired of [Appellant] selling drugs in the house after having been arrested twice. However, Ms. Jackson stressed that [Appellant] did not move in with his grandparents after his release from incarceration.

Nevertheless, once Mr. Sow[b]ell and [Appellant] were at trial, [Appellant] was told by Mr. Sow[b]ell that he was going to testify and let the [c]ourt know that Appellant was not involved. Additionally, [Appellant] reached out to James King to figure out what was going on and alleged that Mr. King did not want to tell him the truth about the matter because James King's juvenile family member was allegedly involved, and that person has never been charged with a crime. Further, while [Appellant] was in prison, [Appellant] was told by James King that Mr. Sow[b]ell would tell the truth once he finished his sentence.

To gain clarity, the [PCRA c]ourt questioned [Appellant] about the timeline of [his awareness]

- 5 -

about the [alleged perpetrators of the home invasion]. Thus, [Appellant] stated before he spoke to Mr. Sow[b]ell in 2012, he contacted James King, Mr. Sow[b]ell's brother, in October 2010 and was told that it was someone named "Skeet" that did the robbery. At that time, [Appellant] was not aware that "Skeet" was a street name for Marquis. After [Appellant] found out that information, he alleges that he told his lawyer. [Appellant] then testifie[d] that he and Mr. Sow[b]ell spoke in 2012 and [Appellant] was told that Marquis and "Dank" were the alleged perpetrators. Based on the information given to [Appellant], Mr. Sow[b]ell was going to testify but did not. After the matter ended, and once Mr. Sow[b]ell was released in 2018 or 2019, [Appellant] was notified by James King that Mr. Sow[b]ell was trying to get in contact with [Appellant]'s lawyer. The [c]ourt questioned [Appellant], between the years of 2012 to 2019, while he had this information, what did he do with it? [Appellant] claimed that he was trying to figure out the case and get people to come to [c]ourt. Additionally, the [c]ourt questioned whether [James King] was subpoenaed to appear at the evidentiary hearing; [d]efense [c]ounsel stated he was not.

The [PCRA c]ourt inquired that if Johnny [Sowbell] did not commit the crime, why would Mr. Sow[b]ell go down for a crime he did not commit. [Appellant] retort[ed], "Man, Johnny lying. Come on, man, that's the made up story." The [c]ourt then responds, "Right. Johnny is lying right?" [Appellant] responds, "[H]e's lying." The [c]ourt questions if Mr. Sow[b]ell was lying, and he was involved, what makes the testimony that [Appellant] was not involved truthful. [Appellant] maintains that though Mr. Sow[b]ell was lying about the facts surrounding the incident, he was not lying about [Appellant] not being involved. Nevertheless, [Victim] was called to testify [and did so *via* Zoom]. Ultimately, during Victim's testimony, she] maintained that [Appellant] is the one who sexually assaulted her.

On March 7, 2022, the PCRA court dismissed Appellant's petition and issued a memorandum opinion explaining its reasons for denying the after-discovered evidence claim.

- 6 -

Appellant's counsel timely appealed and was granted leave of court to withdraw from representation. [A subsequent] counsel was [] appointed and entered his appearance on November 2, 2022. On November 10, 2022, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). [Appellant's counsel failed to do so].

*Commonwealth v. Jackson*, 2024 WL 3983469, *1-*5 (Pa. Super. 2024) (non-precedential decision) (footnotes and most internal citations omitted) (format modified).

At the initial stages of this appeal, we remanded the instant matter to the PCRA court in light of Appellant's counsel's failure to file a Rule 1925(b) statement. *See id.* at *5 (citing Pa.R.A.P. 1925(c)(3) and concluding that, by failing to file a Rule 1925(b) statement, counsel was *per se* ineffective). This Court further directed the PCRA court to appoint new counsel for Appellant and permit newly-appointed counsel to file a Rule 1925(b) statement *nunc pro tunc*. *Id.* at *6. Upon remand, new counsel was appointed and, on October 8, 2024, the PCRA court entered an order directing counsel to file a Rule 1925(b) statement within 21 days. *See* PCRA Order, 10/8/24, at *1 (unpaginated). Appellant's counsel timely complied. *See* Appellant's Rule 1925(b) Concise Statement, 10/28/24, at 1-2. Hence, the matter is now ripe for our review.

Appellant raises the following issues for our consideration.

1. Whether the PCRA court erred in dismissing [A]ppellant's [PCRA] petition . . . after [A]ppellant presented clear and convincing after-discovered evidence that (1) he was not present at the robbery; (2) he was misidentified by the [Victim]; and (3) a second perpetrator committed the crime,

- 7 -

all of which proves his innocence and would have exonerated him had it been available at trial[?]

2. Whether the PCRA court erred in allowing the [Victim] to proceed in testifying, over objection, *via* Zoom with technical difficulties while [she] had other people in the room with her?

3. Whether PCRA counsel was ineffective for (1) not presenting expert testimony o[n] issues relating to eyewitness misidentification at the evidentiary hearing; and (2) not providing the [PCRA c]ourt with a legal argument, after being requested to do so, at the close of the evidentiary hearing?

Appellant's Brief at 6-7.

Our Supreme Court previously explained:

In reviewing the grant or denial of PCRA relief, an appellate court considers whether the PCRA court's conclusions are supported by the record and free of legal error. Moreover, the factual findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given deference. A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be [accorded] great deference by reviewing courts. Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made.

\*\*\*

We will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding. [An appellate court's] scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

*Commonwealth v. Flor*, 259 A.3d 891, 910-911 (Pa. 2021) (quotation marks, citations, and corrections omitted).

In his first issue, Appellant contends that the PCRA court erred in dismissing his after-discovered evidence claim. Appellant argues that he "did

not know that [Mr.] Sowbell was willing to testify until . . . 2021" and, in turn, allegedly exonerate Appellant by explaining that someone else committed the instant crime. Appellant's Brief at 14. This, per Appellant, "qualifies as after-discovered evidence" and the PCRA court erred in concluding otherwise. *Id.* We disagree.

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).

To obtain relief based on after-discovered evidence, an appellant must show that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (citation omitted). To determine whether the evidence is "of such nature and character" to compel a different verdict in a new trial, a court should consider "the integrity of the alleged after-discovered evidence, the motive of those

offering the evidence, and the overall strength of the evidence supporting the conviction." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010).

Herein, the PCRA court determined that Appellant's after-discovered evidence claim failed for two reasons. First, it held that it was "clear that [Appellant] knew about the information," *i.e.*, potential testimony pertaining to the identity of the perpetrators, "before his trial concluded." PCRA Court Opinion, 12/10/24, at 9. Our review confirms the PCRA court's findings as Appellant, himself, testified that "prior to trial," he was informed of the identity of another individual who allegedly committed the robbery in question. ***See*** N.T. Hearing, 6/30/22, at 52 (Appellant admitting that in October 2010 he was told an individual with the "street name, Skeet" committed the instant crime). Second, the PCRA court found Mr. Sowbell's testimony to be incredible. ***See*** PCRA Court's Opinion, 12/10/24, at 10 ("Additionally, by [Appellant's] admission, Mr. Johnny Sowbell was untruthful in his testimony to this court concerning the facts surrounding the robbery"). In rejecting the credibility of Mr. Sowbell's version of events, the PCRA court ostensibly determined that the alleged after-discovered evidence – Mr. Sowbell's testimony – "would not compel [a] different verdict in [a] new trial." ***Padillas***, 997 A.2d at 365 (citation omitted). We are bound by the PCRA court's credibility determinations where they find support in the record. ***See*** ***Commonwealth v. Santiago***, 855 A.2d 682, 694 (Pa. 2004) ("[W]e note that we are bound by the PCRA court's credibility determinations where there

is record support for those determinations."). We conclude that the PCRA court's findings bear record support and, thus, affirm its decision to dismiss Appellant's claim of after-discovered evidence.

In his second issue, Appellant challenges the PCRA court's decision to allow the Victim to testify during the evidentiary hearing *via* Zoom. Appellant contends that the court's decision to allow the Victim to testimony by video violated Appellant's rights under the Confrontation Clause. We disagree.

This Court previously explained:

The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.6. In **Crawford v. Washington**, 541 U.S. 36 (2004), the United States Supreme Court ruled that where the prosecution presents testimonial hearsay, the only indicium of reliability sufficient to satisfy the Sixth Amendment and permit the admission of the hearsay is "confrontation." **Id.** at 68–69[.]

According to our Supreme Court, "[a]t its most basic level, the Sixth Amendment's Confrontation Clause seeks to ensure that the trial is fair and reliable by preserving an accused's right to cross-examine and confront the witnesses against him." **Commonwealth v. Collins**, 888 A.2d 564, 575 (2005). The focus of claims of violation of this constitutional right is on the fairness and reliability of the criminal defendant's **trial**. [Our review demonstrates that there is] no authority holding that a Confrontation Clause challenge may be asserted in non-trial proceedings, including during PCRA evidentiary hearings. **See**, **e.g.**, **United States v. Stone**, 432 F.3d 651, 654 (6th Cir.2005) (because **Crawford** focused only on testimonial evidence at trial, "it does not change our long-settled rule that the Confrontation Clause does not apply in sentencing hearings"), *cert. denied*, 549 U.S. 821 (2006). To the contrary, on at least two occasions our Supreme Court has held that Confrontation Clause issues may not be [applied to witness testimony at hearings in the context of] collateral proceedings.

> *See Commonwealth v. Collins*, 888 A.2d 564, 576 n. 15 (Pa. 2005) ("*Crawford*, however, is unavailable to claimants on collateral review[.]"); *Commonwealth v. Gribble*, 863 A.2d 455, 464 n. 7 (Pa. 2004) ("We need not concern ourselves with that question, as this is a collateral attack, and *Crawford* does not apply.").

*Commonwealth v. Wantz*, 84 A.3d 324, 337 (Pa. Super. 2014) (parallel citations and footnote omitted).

Our review of the certified record reveals that, initially, Appellant did not object to the Victim's appearance *via* Zoom. The Commonwealth indicated that the Victim lived "a[] thousand miles" away from the courthouse, thereby necessitating such testimony. N.T. Hearing, 6/30/22, at 65. Appellant's counsel indicated a preference for live testimony but "under[stood] the circumstances of the case." *Id.* Thereafter, Appellant affirmed that he was "okay" with the Victim testifying *via* Zoom. *Id.* at 67. Over the course of her testimony, however, it became apparent to those at the hearing that others were present in the room with Victim while she testified. The relevant exchanges between the PCRA court, Appellant's counsel, the Commonwealth and the Victim are as follows.

> [Defense Counsel]: Your Honor, I object to the fact that there is other another person in the room.
>
> [Commonwealth]: I agree. [Victim], please, can you not have any conversation with anyone that's in your house? And can you please [not] let anyone speak? And can you please just answer the questions that are put before you?
>
> [Victim]: I did [not] even know he pulled up.
>
> [Commonwealth]: It [is] just that we want the Judge to hear you.

- 12 -

[Victim]: I [am] sorry, yes.

[The court]: Let her know that counsel is going to cross-examin[e] her.

[Commonwealth]: [Victim]?

[Victim]: Yes.

[Commonwealth]: [Appellant's] attorney is going to ask you some questions now, okay?

[Victim]: Yes.

[Defense Counsel]: Your Honor, at this time I'm going to have to object to her testifying *via* Zoom. I want to cross-examine her. My concerns is that there are other people in the room, and they are talking and making comments –

[The court]: We [will] stop it. This thing needs to proceed. [So far, the extraneous comments may have affected the emotions but not the testimony]. You [are] up to bat for cross-examination. She already understands that other people should leave the room. It just should be her talking to you. That [has] been made clear. So, let's move forward.

[Defense Counsel]: This is what I do want to do, though.

[The court]: Okay.

[Defense Counsel]: I do want to make an objection with her proceeding [] *via* Zoom because the anticipation was that, this would be a little easier with regards to maybe on a screen or that it was very clear that she [is] not to have other people in the room. So, at this point I would place an objection.

[The court]: Your objection is noted. I wish to continue with your cross-examination.

[Defense Counsel]: I will. And Your Honor, can I just have one brief moment?

*Id.* at 74-75.

[Defense Counsel]: [Victim], can you hear me?

[Victim]: Loud and clear.

- 13 -

[The court]: There are people there.

[Victim]:  There is no one there. I'm talking to you.

[The court]: I heard voices in the background. [Victim], this is Judge Vincent Johnson.  I need you to make sure there is no one else in the room while you're doing this, okay?

[Victim]: Okay.

[The court]: Is the room clear?

[Victim]: I hear. Come on. Talk to me.

[Defense Counsel]: [Victim], can you hear me now?

[Victim]: I've been trying to hear you. Yes, sir.

[Defense Counsel]: Who is in the room with you right now?

[Victim]: Who is in the room?  God is.

[Defense Counsel]: Say that again.

[The court]: "God is," she said.

[Victim]: What does that have to do with the price of tea in China then this man rapping [sic] me and my baby?

*Id.* at 76.

[The court]: [Victim], I [am] going to let you know that my law clerk is looking at the screen and notices that there is a gentleman in the room with you.  I [am] going to kindly ask you to ask that gentleman to leave, so [you can] testify.

[Victim]: They are just warming up some food in the microwave.

[The court]:  All right. Thank you.  It [is] in her home.  There are people that are there.  We saw it on the camera.  We brought it to your attention.  The person left the room. You can continue your cross-examination.

[Defense counsel]: Note our respectful objection.

[The court]: Your respectful objection is noted.

- 14 -

*Id.* at 88-89.

> [Defense Counsel]: Yup, there's somebody in the back.
>
> [The court]: There is somebody in the back. [Victim], I [have] asked you before not to have anyone present.
>
> [Victim]: That's my son. He [is] only 14 years old.
>
> [The court]: Thank you for identifying him. I do [not] want anyone in the room.
>
> [Victim]: Can you get out of the room, son? I hate to talk to you like this. I [am] yo momma [sic]. We trying to deal with that case what they did to us years ago. Once again --
>
> [The court]: Okay.
>
> [Victim]: He is gone. Now, what were you saying?

*Id.* at 97.

The foregoing demonstrates that Appellant eventually objected to the Victim providing testimony *via* Zoom and, ostensibly, did so based upon the assertion that it violated his Sixth Amendment rights. ***See id.*** at 74 (Appellant's counsel objecting, stating that he wanted to "cross-examine her."). This Court has consistently recognized, however, that a criminal defendant does not enjoy the Sixth Amendment right of confrontation during collateral proceedings. ***See Wantz***, ***supra***. Hence, Appellant cannot obtain relief on this basis. Moreover, to the extent that Appellant takes issue with the fact that, at times, other individuals were present during the Victim's testimony, it is apparent that the PCRA court acted swiftly to ensure that it did not affect the Victim's testimony. Accordingly, we conclude that Appellant's claim fails.

In his third issue, Appellant raises a layered claim of ineffective assistance of counsel.[1]  More specifically, Appellant contends that, because the instant matter hinged on the Victim's identification of Appellant as her attacker, trial counsel's failure to present expert testimony discussing "eyewitness misidentification" constituted ineffective assistance.  Appellant's Brief at 23.  Appellant also faults former PCRA counsel to raise this issue by way of an amended PCRA petition.[2]  *See id.* at 26 (claiming that PCRA counsel "was ineffective for failing to raise this argument in an amended petition and at the evidentiary hearing").  Appellant's claim fails.

This Court has recently determined:

> To be eligible for relief on layered claims of ineffective assistance of counsel, a petitioner must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) subsequent counsel was ineffective for failing to raise trial counsel's ineffectiveness.  As to each relevant layer of representation, a petitioner must meet all three prongs of the [] test for ineffectiveness.  A failure to satisfy any of the three

_____

[1] In the Questions Presented section of his brief, Appellant contends PCRA counsel was ineffective for failing to "provide the [PCRA c]ourt with a legal argument, after being requested to do so, at the close of the evidentiary hearing[.]"  Appellant's Brief at 7.  Appellant, however, fails to develop this claim in his appellate brief.  Accordingly, we deem this issue to be waived for lack of development.  *See Commonwealth v. Noss*, 162 A.3d 503, 509 (Pa. Super. 2017) (finding waiver where appellant failed to develop the issue in his brief), *citing Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived[.]").

[2] Appellant preserved this layered claim of the ineffective assistance by raising this issue at the first opportunity to do so, specifically in his 1925(b) statement and his brief filed with this Court on appeal.  *See* Appellant's Rule 1925(b) Concise Statement, 10/28/24, at 2; *see also Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021).

prongs [] requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of subsequent counsel.

Thus, if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of subsequent counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the [ineffectiveness] test, *i.e.*, the reasonable basis and prejudice prongs as applied to subsequent counsel.

*Commonwealth v. Dickerson*, 2024 WL 3372629, at *3 (Pa. Super. 2024) (non-precedential decision) (internal citations, quotations, and original brackets omitted).[3]

Upon review, we conclude that Appellant's claim fails. Appellant's trial occurred in 2012. At that time, expert testimony regarding eyewitness identification was inadmissible in this Commonwealth. *See*, *e.g.*, *Commonwealth v. Abdul-Salaam*, 678 A.2d 342 (Pa. 1996); *Commonwealth v. Simmons*, 662 A.2d 621 (Pa. 1995); *Commonwealth v. Spence*, 627 A.2d 1176 (Pa. 1993). Indeed, our Supreme Court's decision which reversed this evidentiary prohibition was not issued until 2014. *See Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014). This Court has consistently held that "[c]ounsel cannot be deemed ineffective for failing to predict developments or changes in the law." *Commonwealth v. Spotz*, 896 A.2d 1191, 1228 (Pa. 2006) (citation omitted). Because trial counsel cannot

---

[3] *See* Pa.R.A.P. 126(b) (we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

be said to be ineffective on this basis, Appellant's layered claim challenging PCRA counsel's performance also fails.

Based upon all of the foregoing, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.

Judge Colins did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/16/2025